[Doc. No. 7]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| STEVEN M. SHUBERT : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil No. 08-3754 (NLH) |
| : | |
| WELLS FARGO AUTO FINANCE, : | |
| INC. : | |
| : | |
| Defendant. : | |

**OPINION AND ORDER**

      This matter is before the Court on the "Motion to Compel Individual Arbitration and Stay this Action" [Doc. No. 7], filed by Martin C. Bryce, Jr., Esquire, counsel for Defendant, Wells Fargo. Defendant asks the Court to compel Plaintiff, Steven Shubert, to arbitrate his claims individually and stay Plaintiff's class action lawsuit. Defendant argues that pursuant to an express contractual provision in Plaintiff's Motor Vehicle Lease Agreement ("Lease"), Plaintiff agreed to pursue all claims against Defendant individually in arbitration. Plaintiff opposes Defendant's motion [Doc. No. 10]. The Court received and considered Defendant's reply brief [Doc. Nos. 16 & 17] and Plaintiff's sur-reply brief [Doc. No. 18] and heard oral argument on the issues. For the reasons stated herein, the Court grants Defendant's motion.

**Background**

      Only a brief recitation of the relevant background facts is necessary because the Court's decision does not address the merits of Plaintiff's claims. In March 2004, Plaintiff leased a 2004 Audi from Atlantic Chrysler Plymouth ("Plymouth") of Pleasantville, New Jersey and signed a

Motor Vehicle Lease Agreement. (Complaint ¶ 10 [Doc. No. 1, Exh. A].) Section N of the Lease states:

> **ARBITRATION**
> Any controversy or claim between or among you and me, including, but not limited to those arising out of or relating to this lease or any related agreement or any claim based on or arising from an alleged tort, shall at the request of either party be determined by arbitration.  The arbitration shall be conducted in accordance with the United States Arbitration Act (Title 9, U.S. Code), notwithstanding any choice of law provision in this lease, and under the authority and rules of the American Arbitration Association then in effect. Neither I nor you shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in a private attorney general capacity.

 Subsequently, Plymouth assigned its rights and interests in the Lease to Wells Fargo.  (Id. at ¶11.)  On March 15, 2008, Plaintiff returned the leased vehicle to Wells Fargo's designated drop-off location in Hatfield, Pennsylvania.  (Id. at ¶13.)  Approximately five days later, Plaintiff received a $578.79 bill  from Wells Fargo for alleged excess wear and use.  (Id. at ¶14.)  Plaintiff then contacted Wells Fargo seeking information about the alleged damage to the vehicle.  (Id. at ¶¶ 15, 16.)  Plaintiff alleges that Wells Fargo threatened to initiate collection and a negative credit report if he did not pay the bill.  (Id. at ¶18.)  Thus, under protest and duress, Plaintiff paid the bill.  (Id. at ¶18.)

On June 20, 2008, Plaintiff filed his class action complaint in New Jersey Superior Court on behalf of himself and all similarly situated persons in New Jersey whose motor vehicle leases terminated since August 2002 and who were charged for excess wear and use. (Complaint at ¶¶ 1, 4, 27.)  In his complaint Plaintiff claims Defendant breached the Lease, violated  the New Jersey Consumer Protection Leasing Act ("CPLA"),  N.J.S.A. § 56:12-66 et seq. and violated the

New Jersey Consumer Fraud Act, ("CFA") N.J.S.A. § 56:8-1 et seq. when it billed him for excessive wear and use after he returned his vehicle. (Complaint at ¶¶ 33-50.) In response to Plaintiff's complaint, Defendant removed the action [Doc. No. 1] and filed the motion presently before the Court to compel Plaintiff to arbitration.

**Summary of the Arguments**

Defendant contends that Plaintiff is obligated to arbitrate all of his claims individually because (1) a valid arbitration agreement exists and (2) Plaintiff's claims fall within the scope of the agreement. Defendant argues that the express and broad language of Plaintiff's Lease requires that any controversy arising out of the Lease will be arbitrated and Plaintiff cannot meet his burden to show that the arbitration agreement is invalid. (See Defendant's Brief ("Def. Br.") at 4, 8.) Defendant also argues that pursuant to express language in the Lease, the Federal Arbitration Act, 9 U.S.C. § 1-14 (2006) ("FAA") governs this action and that the FAA preempts any conflicting state law and applies to Plaintiff's consumer claims. (Id. at 5, 9.) Defendant also argues that Plaintiff expressly agreed to arbitrate all claims arising out of the Lease on an individual basis, and therefore Plaintiff's class action claim should be barred.

Plaintiff does not dispute that he received, read and executed the Lease. Rather, Plaintiff argues that Defendant has no right to compel arbitration because Defendant did not request arbitration in accordance with the American Arbitration Association's rules ("AAA") and thus has not satisfied a condition precedent necessary to trigger the arbitration clause. (Plaintiff's Opposition Brief ("Pl. Opp."), 6.) Defendant admitted in oral argument that it did not formally demand arbitration before it filed its motion, but contends that its Motion to Compel is such a request.

Notwithstanding Defendant's alleged failure to trigger the arbitration clause, Plaintiff also argues that his claims against Defendant fall outside the scope of the clause. Plaintiff interprets the Lease's arbitration clause to mean that either party has the right to request arbitration unless there is a class action claim. (Plaintiff's Declaration at ¶ 7.) Plaintiff argues that the Lease is a contract of adhesion, and thus it should be interpreted strictly against the drafter. (Pl. Opp. at 8.) Therefore, Plaintiff argues, even if Defendant requests arbitration of Plaintiff's individual claims, he is permitted to litigate his class action in court. (Id. at 9.)

Lastly, Plaintiff argues that even if the Court finds (1) Defendant requested arbitration and (2) the dispute falls within the scope of the arbitration clause, the matter should proceed in arbitration as a class action because the no-class arbitration clause is severable and unconscionable under New Jersey law. (Id. at 9-10.) Plaintiff argues that a no-class action provision in an adhesive consumer contract where the dispute involves a small amount of money is exculpatory and unconscionable under the New Jersey Supreme Court's holding in Muhammad v. County Bank of Rehoboth Beach, Del., 189 N.J. 1 (2006). Plaintiff contends he could not get financing from any other lending institution in New Jersey without entering into a lease that gave the lender the right to compel arbitration and waived the lessee's right to bring a class action. (Plaintiff's Declaration at ¶ 6).[1]

---

[1] The Court rejects Plaintiff's argument that he should be permitted to conduct non-merits discovery before Plaintiff's motion is decided. The Court entered a Consent Order permitting Plaintiff to serve discovery requests on Defendant, but limited the discovery to fact information related solely to the individual plaintiff [Doc. No. 22]. The Court has determined that the present motion can be decided without discovery. See O.N. Equity Sales Co. v. Emmertz, 526 F. Supp. 2d 523, 528 (E.D. Pa. 2007) (finding that the evidence before the court was sufficient to determine the issue of arbitrability without further discovery and noting that "discovery may serve to undermine the advantages offered by arbitration"). Plaintiff requests discovery to establish that his arbitration clause is unconscionable under New Jersey law (sur-reply 11-13). However, for the reasons discussed infra, even if the Court accepts Plaintiff's unconscionablity argument his arbitration provision is enforceable because New Jersey law is

**Discussion**

By way of background, the parties' arbitration agreement is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (2006). The FAA applies to any "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction." 9 U.S.C. § 2. Section two of the FAA "extend[s] the Act's reach to the limits of the Congress' Commerce Clause power." Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 268 (1995). "The Third Circuit has thus found that an agreement to arbitrate in a matter that is 'within Congress' power to reach under the Commerce Clause' is governed by the FAA." Barbour v. CIGNA Healthcare of New Jersey, Inc., Civ. No. 02-417, 2003 WL 21026710, *3 (D.N.J. March 4, 2003) (citing Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287, 292 (3d Cir.2001)). Here, the Lease is between citizens of different states, Defendant is a citizen of California and Pennsylvania and Plaintiff is a citizen of New Jersey. Plaintiff returned his car to Wells Fargo in Pennsylvania and was assessed the excessive wear and use fee in Pennsylvania. Thus, the Lease falls within the scope of interstate commerce and is governed by the FAA.

There is a strong federal policy in favor of compelling arbitration over litigation. See Sandvik AB v. Advent Intern. Corp., 220 F.3d 99, 104 (3d Cir. 2000). The FAA was enacted "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration on the same footing as other contracts." Gay v. CreditInform, 511 F.3d. 369, 378 (3d Cir. 2007) (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). The FAA allows a party to petition a district court for an order compelling arbitration when another party refuses or

---

preempted by the FAA.

fails to arbitrate a claim pursuant to a written arbitration agreement so long as the district court would have jurisdiction over a suit on the underlying dispute. 9 U.S.C. § 4.  "[I]f a party petitions to enforce an arbitration agreement, '[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'" Sandvik AB, 220 F.3d at 104 (citing 9 U.S.C. § 4).

When determining whether to compel arbitration the court must decide (1) if the parties entered into a valid arbitration agreement and, if so (2) whether the dispute between the parties is within the scope of the agreement. Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005).  The court "is not to consider the merits of the claims giving rise to the controversy." Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir.1996) (citing 9 U.S.C. § 2). The party opposing the enforcement of the arbitration agreement bears the burden of proving that the claims at issue are not subject to arbitration. Green Tree Fin. Corp. Ala. v. Randolph, 531 U.S. 79, 91-92 (2000).  Here, Plaintiff does not challenge the validity of his arbitration agreement "in toto" but only the provision barring class actions.  (See Pl. Sur-reply at 4.)   In fact, Plaintiff relies on specific terms of the arbitration agreement in challenging Defendant's motion.  (Id.) Thus, the Court will only consider the validity of the class arbitration waiver.

A.  Defendant's motion to compel satisfies the requirement that it request arbitration.

The Court finds Defendant's Motion to Compel Arbitration is an adequate request for arbitration, thus triggering the arbitration clause in the Lease. Plaintiff's argument that Defendant cannot enforce the arbitration agreement because Defendant failed to formally request arbitration in writing pursuant to the AAA overemphasizes form over substance.  By filing its motion

Defendant has clearly demonstrated its desire to pursue Plaintiff's claims in arbitration. It would be nonsensical to deny Defendant's motion based on its failure to formally request arbitration because Defendant would subsequently request arbitration and re-file its motion. Plaintiff also argues if Defendant's motion is granted, Plaintiff would be compelled to initiate arbitration and be forced to pay the arbitration fee. However, this argument has been addressed because at oral argument Defendant agreed to pay the arbitrator's fee if its motion is granted.

B. Plaintiff's claims fall within the scope of the arbitration agreement.

Because the Lease expressly prohibits class arbitration and there is no ambiguity on this point, and no contract interpretation is required, the Court, and not the arbitrator, will determine the scope of the arbitration clause in the Lease. The Supreme Court explained that "whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is a question for the court," but "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-84 (2002) (internal quotations omitted). Questions of arbitrability to be decided by the court include certain "gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452 (2003). Issues requiring interpretation of a vague or ambiguous arbitration clause are left to the arbitrator. See id. In Bazzle, the petitioner sought to compel individual arbitration arguing that class actions were precluded by the contracts in question. A plurality of the Supreme Court found that because (1) there was a dispute about whether the language of the contracts permitted class arbitration and (2) the parties agreed to submit to binding arbitration

"all disputes, claims or controversies" arising from the contracts, the dispute over class arbitration was a matter of contract interpretation to be decided by the arbitrator. Id. at 451-54.

Here the Court finds that there is no dispute that the Lease prohibits class arbitration and therefore, Bazzle is not applicable. Bazzle "stand[s] for the proposition that, when an arbitration provision does not expressly permit or prohibit class-wide arbitration, the decision as to whether the contract [ ] forbid[s] class arbitration, . . . is for the arbitrator." Gipson v. Cross Country Bank, 354 F. Supp. 2d 1278, 1285 (M.D. Ala. 2005). However, when an arbitration agreement contains an express class action prohibition, courts have held that the validity and enforceability of an express class action waiver clause is a gateway issue to be determined by the court. Id.; see also Jock v. Sterling Jewelers, Inc., 564 F. Supp. 2d 307, 310 (S.D.N.Y. 2008) (distinguishing Bazzle because the contract at issue expressly prohibited class arbitration). See also Litman v. Cellco Partnership, Civ. No. 07-4886, 2008 WL 4507573 (D.N.J. Sept. 29, 2008) (district court decided whether Plaintiff's class action claims were subject to arbitration); Davis v. Dell, Civ. No. 07-630, 2008 WL 3843837 (D.N.J. Aug. 15, 2008) (affirming magistrate judge's order compelling Plaintiff's claims to proceed to arbitration). Here, both Plaintiff and Defendant agree that the Lease specifically prohibits class arbitration, therefore, unlike in Bazzle, there is no need for the arbitrator to interpret the contract to determine whether class arbitration is permitted. As a result, the Court finds that it is appropriate for it to decide Plaintiff's motion and not an arbitrator.

The Court also finds that Plaintiff's claims are subject to arbitration under the plain terms of the Lease. When deciding whether Plaintiff's claims must be arbitrated, the court must consider the term's "plain and ordinary meaning" along with the "objective manifestations of the

8

parties' intent." Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (internal citations omitted). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983) (finding that there is a liberal federal policy favoring arbitration agreements). When these principles are applied to the language in the Lease, it is plain that Plaintiff's claims must be arbitrated. Here, the arbitration agreement states that "[a]ny controversy or claim between or among you and me, including . . .those arising out of or relating to this lease . . . shall at the request of either party be determined by arbitration."  By use of the term "any" the Lease is expressing a broad scope of arbitration so long as a claim arises out of or relates to the lease. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 406 (1967) (finding that "[a]ny controversy or claim" language in parties' contract evidenced an intent to give a broad scope to the arbitration agreement).  There is no serious issue that Plaintiff's claims arise out of or relate to the Lease.  Therefore, according to the plain language in the Lease, Plaintiff's claims must be determined by arbitration.  The arbitration provision next states that neither party shall be entitled to bring a class action in arbitration.  Because Plaintiff's claims must be determined by arbitration, and because class actions are waived in arbitration, Plaintiff must bring his claims individually in arbitration.

The Court rejects Plaintiff's argument that the language in the Lease is ambiguous and, because the contract is adhesive, any ambiguity should be construed against the drafter.  Whether a term is clear or ambiguous is  . . .  a question of law." Kaufman v. Provident Life and Cas. Ins.

9

Co., 828 F. Supp. 275, 282 (D.N.J.1992), aff'd, 993 F.2d 877 (3d Cir.1993).  A writing is interpreted as a whole. Krosnowski v. Krosnowski,  22 N.J. 376, 387 (1956); see Jones v. The Chubb Institute, Civ. No 06-4937, 2007 WL 2892683, at *4 (D.N.J. Sept. 28, 2007) (compelling plaintiff to arbitrate claims despite asserted ambiguity in arbitration provision because plaintiffs' reading of the contract was illogical considering the contract as a whole ).  In addition, like this case, other courts have compelled individual arbitration where the plaintiffs filed lawsuits on behalf of a class and the contract language precluded class arbitration but did not specifically state that class actions were prohibited in court. See Homa v. American Exp. Co.,  496 F. Supp. 2d 440, 451 (D.N.J. 2007) (finding that the class-arbitration waiver was enforceable and dismissing the action in favor of individual arbitration).

     Plaintiff interprets the arbitration clause to mean that either party has the right to request arbitration unless there is a class action claim, and if there is a class action claim then neither party can request arbitration. (Plaintiff's Declaration at ¶ 7.) The same argument was raised and rejected in Jones, supra, where the court addressed a class arbitration waiver similar to that in Plaintiff's Lease.  The Jones plaintiffs argued that the class action waiver applied only to claims pursued in the arbitration process and not in filed law suits. Id.  However, in Jones, the court found that because the agreement stated that "any and all claims" must be brought through arbitration, plaintiff's interpretation, whereby an individual claimant would be required to arbitrate his claim while a group of claimants could sue in court as a class, would lead to an illogical result and was not in keeping with the plain meaning of the agreement. Id.   This Court agrees with Jones.  Like the court found in Jones, Plaintiff's interpretation of the agreement is illogical considering the plain and unambiguous language of the agreement and the general

policy favoring enforcement of arbitration provisions. Accordingly, the Court finds that Plaintiff's Lease bars him from pursuing a class action claim against Defendant in arbitration and in court.

C. <u>The no-class action arbitration provision is valid.</u>

Plaintiff argues that the arbitration clause is invalid under New Jersey law and may not be enforced. The Court finds that Plaintiff's class action waiver is valid and enforceable under the FAA, even if it is unconscionable under New Jersey law, because New Jersey law on this issue is preempted by the FAA. "[A]rbitration agreements within the scope of the FAA may be enforced even if they conflict with state law policies that would preclude arbitration." <u>Great Western Mortg. Corp. v. Peacock</u>, 110 F.3d 222, 230 (3d Cir. 1997) (citing <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52 (1995)). See <u>Gay</u>, 511 F.3d at 394-95 (finding that state law principle dealing uniquely with arbitration agreements was preempted by federal law); <u>Litman</u>, 2008 WL 4507573, at *6 (finding federal law preempted the New Jersey law which held certain class arbitration waivers invalid).

Plaintiff argues that the provision barring class actions in arbitration is unenforceable because it is unconscionable pursuant to generally applicable New Jersey law. Plaintiff relies on the New Jersey Supreme Court's holding in <u>Muhammad v. County Bank of Rehoboth Beach, Del.</u>, 189 N.J. 1 (2006).[2] In <u>Muhammad</u>, the court found that the presence of a class arbitration waiver in a consumer adhesion contract where the amount of recovery is small rendered the agreement unconscionable and unenforceable. The court held that "adhesive consumer contracts

---

[2] The Lease agreement contains a forum selection clause stating that it will be interpreted according to the laws of the state where it is signed by the lessee. Plaintiff signed the lease in New Jersey, therefore New Jersey contract law applies.

11

which are ordinarily enforceable, nonetheless may rise to the level of unconscionablity when substantive contractual terms and conditions impact public interests adversely." Id. at 19.  The court also noted that "in New Jersey, exculpatory waivers that seek a release from a statutorily imposed duty are void against public policy." Id. The court found that although the plaintiff's class arbitration waiver was not exculpatory in the strictest sense, because it allowed the plaintiff to individually bring a claim in arbitration, the fact that consumer fraud cases often involve small damages rendered individual enforcement of rights "difficult if not impossible" and in effect exculpatory. Id. at 19-20. The Muhammad court therefore found "that the presence of the class-arbitration waiver in Muhammad's consumer arbitration agreement renders that agreement unconscionable." Id. at 22.

      Even if the Court were to find that the Lease's waiver of class actions in arbitration is unconscionable under New Jersey law, an issue this Opinion does not address, such a finding is preempted by the FAA because the state law principle in Muhammad is unique to arbitration agreements as opposed to contracts generally.  Federal law determines whether an issue governed by the FAA is referable to arbitration. See Harris v. Green Tree Fin. Corp., 183 F.3d 173, 178 (3d Cir. 1999).  Pursuant to section two of the FAA, the court refers to state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA. Gay, 511 F.3d at 394.  In discussing the choice-of-law issue, the Supreme Court distinguished between state law principles that apply to contracts generally and those that are unique to arbitration agreements. Id. A "state law . . . is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.  A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with

this requirement of § 2." Perry v. Thomas, 482 U.S. 483, 492 n. 9 (U.S. 1987). Thus, applying federal law, the Third Circuit has "reinforced that the FAA establishes a strong federal policy in favor of resolution of disputes through arbitration." Litman, 2008 WL 4507573 at *7.

The district court in Litman and the Third Circuit in Gay considered almost the identical unconscionablity argument raised by Plaintiff and determined that the FAA preempted state law that precluded enforcement of an arbitration provision barring class actions. See Litman, 2008 WL 4507573, at *4; Gay, 511 F.3d at 393. In Litman, the court stated, "the issue before th[e] Court is whether the FAA preempts the holding of Muhammed here. The Third Circuit addressed this precise issue in Gay, where the court held that a state law determination that precludes on unconscionablity grounds, enforcement of an agreement to arbitrate low value consumer claims on an individual basis is preempted by the FAA." See Litman, 2008 WL 4507573, at * 4. Thus, the Litman court held "that in-sofar [sic] as the FAA and Muhammad are inconsistent, federal law preempts the holding in Muhammed." Id. at *6.

The Gay and Litman decisions compel the Court to reject Plaintiff's argument that Defendant's no-class action provision is unenforceable. In Gay, the plaintiff purchased credit repair services from the defendant and brought a class action alleging that the company violated two Pennsylvania statutes. After the district court granted defendant's motion to compel arbitration pursuant to the arbitration clause in the parties' service agreement, the plaintiff appealed arguing inter alia, that the arbitration provision barring class actions was unconscionable under Pennsylvania law. Gay, 511 F.3d at 392-93. The plaintiff relied on two Pennsylvania Superior Court decisions where the court refused to enforce arbitration clauses that waived class action arbitrations on the ground that they were unconscionable under state law. Id.

After a conflicts of law analysis, the Gay court applied Virginia law to decide the unconscionablity issue. Id. at 394.  However, the court found that federal law preempted Pennsylvania law because the state law principle dealt uniquely with agreements to arbitrate and not contracts in general, and was not in conformity with the Supreme Court's holding in Perry, supra. Id. at 394-95. Although this discussion is dicta the Court finds the analysis instructive and persuasive.

After Gay was decided the court in Litman considered almost the exact issue presented in this case. The plaintiffs in Litman, Verizon customers, brought a class action alleging Verizon improperly imposed an administrative charge on their cellular phone accounts.  Verizon filed a motion to compel arbitration in accordance with the parties' customer agreement.  The plaintiffs argued that the provisions of the arbitration agreement prohibiting class actions should be invalidated as unconscionable under Muhammad.  The court rejected plaintiff's argument and found that in Muhammad, the court only looked at the class waiver in arbitration and not the broad class action waiver.  Litman, 2008 WL 4507573, at *5.  The Litman court held that, pursuant to Gay, federal law applied and compelled arbitration.  Id. at *6

Plaintiff asserts that the Litman court misread Gay, and relied on dicta to support its holding.  Plaintiff also argues that the New Jersey Supreme Court applied general state law principles in deciding Muhammad, citing the sentence following the Muhammad court's holding, "as a matter of generally applicable state contract law, it was unconscionable for defendants to deprive Muhammad of the mechanism of a class-wide action, whether in arbitration or in court litigation." Id. at 22.  The Court agrees with the finding in Litman that the Muhammad court's "mention of 'class wide . . . in court litigation' is dicta." Litman, 2008 WL 4507573, at *5.  The

14

language cited by Plaintiffs is not the <u>Muhammad</u> court's holding because the court explicitly stated it was only considering the class-waiver in the context of the arbitration clause. <u>Id.</u> at 14. The loan agreement in <u>Muhammad</u> contained a mandatory individual (no-class) arbitration clause as well as a separate broad class action waiver. <u>Id.</u> at 9-10. The <u>Muhammad</u> court stated that it would not consider whether the broad class action waiver was unconscionable because that provision "could be considered as part of the contract as a whole." <u>Id.</u> at 14. Therefore, because the <u>Muhammad</u> court only considered the no-class action arbitration provision in the contract, its holding can only apply to the arbitration clause.

Plaintiff also attempts to distinguish <u>Litman</u> and <u>Gay</u>, arguing that the plaintiffs in those cases challenged the validity of the arbitration agreements "in toto" and here, Plaintiff only challenges the class action waiver provision. (<u>See</u> Pl. Sur-reply at 4.) The Court does not find this argument convincing because the <u>Litman</u> and <u>Gay</u> courts distinctly analyzed the no-class action arbitration clauses and found that federal law preempted the conflicting state law.

<u>Conclusion</u>

In conclusion, the Court finds that Defendant has satisfied the provision in the lease requiring that it request arbitration. The Court also finds that the relevant arbitration provision does not permit plaintiff to pursue a class action in court. Lastly, the Court finds that even if Plaintiff's no-class action provision is unconscionable under New Jersey law, this finding is preempted by the FAA and Plaintiff may not pursue class wide relief in arbitration. Accordingly, for all the reasons stated herein,

IT IS on this 31st day of December 2008 hereby

ORDERED that Defendant's Motion to Compel Arbitration is GRANTED and the parties

shall proceed to arbitration in accordance with the arbitration provision in Plaintiff's Lease; and it is further

  ORDERED that the parties shall advise the Court in writing when the case is referred to arbitration and thereafter this matter will be stayed.

                /s/ Joel Schneider

                JOEL SCHNEIDER

                United States Magistrate Judge